Joel H. GROWDEN, et al.,
Plaintiffs-Appellees,

v.

ED BOWLIN AND ASSOCIATES, INC.,
et al., Defendants-Appellants.

No. 83–3631
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 8, 1984.

Francis G. Weller, New Orleans, La., for plaintiffs-appellees.

Howard Daigle, Jr., New Orleans, La., Jacques E. Soiret, Los Angeles, Cal., for Teledyne.

Bruce S. Kingsdorf, New Orleans, La., for Growden, etc.

Dorothy Dubroc Thomas, Baton Rouge, La., for Mary Anne Smith.

Before GEE, POLITZ, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

In this Louisiana wrongful death diversity case arising from the crash of a Cessna aircraft, the issue on interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is whether the district court erred in denying defendant's motion to dismiss for lack of in personam jurisdiction. Finding that plaintiffs showed insufficient minimum contacts with Louisiana to justify the exercise of in personam jurisdiction, we reverse the district court's decision.

Defendant Ed Bowlin and Associates, Inc. (Bowlin) is a Georgia corporation which is engaged in the business of resale of used aircraft and sells one to three aircraft a year. Bowlin advertised the Cessna aircraft in two national publications, "Aero Trader" and "Trade-A-Plane". Plaintiff's decedent, Tom Growden, a Louisiana resident, saw one of these advertisements and on February 13, 1982, called Bowlin in Griffin, Georgia, to inquire about purchasing the plane on behalf of Growden Brothers, a Louisiana corporation. The next day Bowlin and his wife met with Growden and his wife and son in Eufala, Alabama, to demonstrate the plane. On March 23, 1983, Tom and Jim Growden signed an agreement to purchase the plane and paid the purchase price of $37,500 in Georgia. The Growdens personally received the plane in Griffin, Georgia, and flew it from there to Louisiana. To enable Growden Brothers to avoid paying the Georgia sales tax, the parties executed a "Certificate of Exemption" attesting to out-of-state delivery. Bowlin paid Tom Growden a fee of $50 to fly the plane from Griffin, Georgia, to New Orleans for delivery to himself in Louisiana. Before the Growdens left Georgia, they noticed a flickering alternator light and Bowlin agreed to pay for any repairs to remedy the problem after arrival in Louisiana. There were no further communications concerning the flickering alternator light. On April 1, 1982, on the first flight the plane made after it arrived in Louisiana, the plane lost power and crashed; both occupants, Tom Growden and Richard Smith, died. Their survivors filed suits, now consolidated, to recover damages for the wrongful death of Growden and Smith against the manufacturers of the aircraft, the engine, and the auxiliary fuel tanks, against the company which had serviced the aircraft, and against Bowlin. Without issuing written reasons, the district court denied Bowlin's motion to dismiss for lack of jurisdiction over the person. The court first denied certification of the jurisdictional issue under 28 U.S.C. § 1292(b) but, upon reconsideration, certified the question. By order of October 20, 1983, this court granted Bowlin leave to appeal from the interlocutory order of the district court.

Plaintiffs assert jurisdiction under the Louisiana "long-arm" statute, LSA–RS 13:3201. In a diversity action, a federal court has jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state. *Quasha v. Shale Development Corp.*, 667 F.2d 483, 484–85 (5th Cir.1982). The Louisiana long-arm statute permits exercise of in personam jurisdiction to the full limits of due process under the fourteenth amendment in cases where the suit arises from the nonresident's contact with the forum. *Talbot Tractor Co. v. Hinomoto Tractor Sales, USA*, 703 F.2d 143, 144 (5th Cir.1983); *Quasha*, 667 F.2d at 486. The exercise of in personam jurisdiction comports with constitutional due process requirements if (1) the nonresident defendant has some minimum contacts with the state resulting from an affirmative act or acts on its part and (2) it is not unfair or unreasonable to require the defendant to defend the suit in the forum. *Hydrokinetics v. Alaska Mechanical Inc.*, 700 F.2d 1026, 1028 (5th Cir.), *petition for cert. filed*, 52 U.S. L.W. 3028 (U.S. July 25, 1983) (No. 83–122). This constitutional test is two-pronged; the fairness prong [1] cannot compensate for or

---

1. This prong includes factors such as the quality, nature and extent of the activity in the forum state; the relative convenience of the parties; the benefits and protection of the laws of the

overcome the requirement of some minimum contacts with the forum state. *Talbot Tractor*, 703 F.2d at 147. The affirmative act prong requires that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

█ We look to the jurisdictional facts in the instant case to determine whether Bowlin had the necessary minimum contacts with Louisiana to comport with due process requirements. Bowlin does not maintain an office, agent, or place of business in Louisiana. It has never advertised in local Louisiana media; it has no listing in any Louisiana telephone directories. There is no evidence that it has ever made any sales to residents of Louisiana other than the sale to Growden in this case. There is no evidence that it has ever sent representatives, inspectors, or repair or service personnel to Louisiana. Plaintiffs seek to base jurisdiction on the one isolated sale in the instant case. Regarding this sale, Bowlin did not reach out to Growden in Louisiana for business. Instead, it was Growden who, after seeing an advertisement in a national publication, communicated by telephone with Bowlin in Georgia about purchasing the plane. Bowlin and Growden met in Alabama—not Louisiana—for a demonstration of the plane. They next met in Georgia where payment was made and where the Growdens physically took possession of the plane and flew it themselves to Louisiana. The only face-to-face discussions about the sale took place in Alabama and Georgia, outside of the forum state.

Plaintiffs argue that defendant Bowlin had sufficient contacts with Louisiana for the following reasons: (1) Bowlin placed advertisements in two national publications, (2) delivery occurred in Louisiana, (3) Bowlin promised to pay for any repairs to remedy the flickering alternator light, (4) Bowlin knew the plane would be home-based in Louisiana, (5) the plane was paid for with two checks drawn on a Louisiana bank.[2]

In *Loumar v. Smith*, 698 F.2d 759, 763–64 (5th Cir.1983), this Court held that the fact the defendants had placed advertisements in nationally circulated publications was not sufficient in itself to subject them to Texas jurisdiction.[3] Although we recognized that the Supreme Court in *World-Wide Volkswagen* had included "advertising reasonably calculated to reach the State" as one of many factors which could support the exercise of jurisdiction, this Court specifically noted that "[t]he Court did not hold ... that advertising reasonably calculated to reach the state, would, without more, permit assertion of personal jurisdiction over the advertiser." *Id.* at 764.[4] Although in the instant case the

forum state afforded the respective parties; whether the state has any special interest in providing a forum for the suit; the basic equities of the situation.

**2.** Plaintiffs also argue that the fairness prong supports the exercise of jurisdiction over Bowlin, e.g., that Louisiana has a significant interest in providing its citizens redress against corporations whose acts or omissions outside of Louisiana cause injury or death within Louisiana or that it is more equitable to allow plaintiffs to try all their claims arising from the accident in one forum since all the other defendants are amenable to jurisdiction in Louisiana and since Louisiana law applies. Nevertheless, a state's interest in providing a forum or the relative conveniences and inconveniences to the parties cannot substitute for the requirement of some necessary minimum contacts.

**3.** In *Loumar* we noted that the record contained no evidence of any specifics—which publications the ads ran in, whether the publications were circulated in Louisiana and, if so, how widely and how frequently, and the amount of business obtained from the ads.

**4.** In *Charia v. Cigarette Racing Team, Inc,* 583 F.2d 184 (5th Cir.1978), a pre-*World-Wide Volkswagen* case, the defendant had placed advertise-

record identifies the two national publications in which the plane was advertised and indicates that the publications circulated in Louisiana, the record contains no further details, *e.g.*, how widely and frequently the publications were circulated and the amount of business the ads generated for Bowlin.[5] The foregoing evidence of Bowlin's advertising in these two national trade publications which circulated in Louisiana is insufficient, without more, to constitute a "purposeful availment" of the facilities of Louisiana.[6]

The second contact allegedly supporting the exercise of jurisdiction over Bowlin is the delivery of the plane in Louisiana. We must reject the notion that recital of delivery in Louisiana solely for tax purposes is a significant jurisdictional contact. What is more important is that the Growdens went to Georgia to accept the plane, take possession of it, and fly it back to Louisiana. Irrespective of where delivery was recited to be for tax purposes, Bowlin never set foot in Louisiana. Furthermore, the fact that Bowlin promised to pay for any repairs to fix the alternator light cannot be a significant contact for jurisdictional purposes given that there were no repairs actually made, that there were no further communications about the subject and that Bowlin never sent any repair or service personnel to Louisiana.

Bowlin's knowledge that the plane would be home-based in Louisiana is also insufficient to support the exercise of jurisdiction. Plaintiff argues that in *Austin v. North American Forest Products*, 656 F.2d 1076 (5th Cir.1981), this Court found the exercise

of jurisdiction to be proper where the defendant knew that the doors it manufactured were to be installed in a housing facility in Louisiana. In *Austin* we concluded that the defendant had purposely availed itself of the benefits and protections of Louisiana law because of its "absolute knowledge" that the doors would be purchased by a Louisiana consumer and "installed in a Louisiana housing project" and because of written representations certifying the quality of the doors sent by the defendant to the plaintiff in Louisiana. *Id.* at 1091. In the instant case defendant sent no written representations to the Growdens in Louisiana; the mobility of a plane would preclude any certain knowledge that the plane would only be used in Louisiana. Because it involves a plane, the instant case is far more comparable to *Charia* than to *Austin.* In *Charia*, this Court found no jurisdiction over the nonresident boat builder defendant even though the defendant knew that the boat's home port would be Louisiana. *Charia*, 583 F.2d at 187–188. Finally, the fact that payment was made with two checks drawn on a Louisiana bank is insignificant jurisdictionally. *See id.* at 188. Furthermore, payment was made outside of the forum state. We conclude that the totality of defendant's contacts with Louisiana does not support an inference of purposeful availment and consequently defendant's contacts with the forum are insufficient to allow the exercise of in personam jurisdiction. The judgment of the district court is

REVERSED.

---

ments in several national boating magazines; the plaintiff saw the ads and contacted the defendant seeking further information. There we stated that "merely advertising in magazines of national circulation that are read in the forum state is not a significant contact for jurisdictional purposes." *Id.* at 187, quoting *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723 (5th Cir.), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973).

**5.** Since Bowlin sold only one to three planes a year, at best the ads could have generated no more sales than this number per year.

**6.** In *Loumar* we recognized that the Texas Supreme Court has held that a defendant's "decision to advertise in Texas telephone directories, in and of itself, is a sufficiently purposeful act [to satisfy due process requirements]," 698 F.2d at 764, *quoting Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434 (Tex.1982), and noted that the record contained no evidence that the defendants advertised in Texas telephone directories or in other local publications. The record in the instant case is likewise devoid of any evidence that defendant advertised in any local Louisiana directories or publications.