**Mary M. SKIDMORE,
Plaintiff-Appellant,**

**v.**

**SYNTEX LABORATORIES, INC., a
Division of Syntex Corporation,
Defendant-Appellee.**

**No. 74–3642.**

United States Court of Appeals,
Fifth Circuit.

April 12, 1976.

Max E. Ramsey, Odessa, Tex., Dick Stengel, El Paso, Tex., for plaintiff-appellant.

Wayne P. Sturdivant, Amarillo, Tex., for defendant-appellee.

Before BROWN, Chief Judge, RIVES and GEE, Circuit Judges.

RIVES, Circuit Judge:

This diversity action was filed by the plaintiff, a citizen of Texas, against Syntex Laboratories, Inc., a corporation organized under the laws of Delaware and having its principal place of business in California,[1] and Syntex Corporation, a corporation organized under the laws of Panama with its principal place of business located elsewhere than in the State of Texas.[2] Plaintiff's complaint alleged that at all relevant times the defendants were engaged in manufacturing and distributing birth control pills under the tradename of Norinyl 1 + 80, and sought the recovery of damages for personal injuries suffered by the plaintiff as the result of her use of these oral contraceptives.

The defendants moved to dismiss for lack of in personam jurisdiction over the defendants, and on December 5, 1973, the district court denied that motion in an order reading in part:

"(1) Dismiss for Lack of Personal Jurisdiction—this court hereby DENIES the motions on behalf of both Syntex Laboratories, Inc. and Syntex Corporation and finds that based on the record before the court at this time, this court has personal jurisdiction over the Defendants. There is shown service of process on the Secretary of State of Texas as provided by the Texas Long Arm Statute, Tex.Rev. Civ.Stat.Ann. art. 2031b (1964). The

Defendants apparently base their motion on a due process argument in that they do not have sufficient 'minimum contacts' with Texas to come under the personal jurisdiction of this court. Based on the record at this time and the opinion in *Coulter v. Sears, Roebuck, and Co.*, 426 F.2d 1315 (5th Cir. 1970), this court finds it has the requisite jurisdiction." (App. p. 42.)

Beginning August 15th, the district court reconsidered and on August 20, 1974 granted the motion to dismiss for lack of jurisdiction. It is from that order that the present appeal is prosecuted. We quote at length pertinent parts of the supporting opinion of the district court:

". . . Initially the motion to dismiss was denied by order of this court dated December 5, 1973 based upon the record at the time that denial was entered. Subsequent to such time considerable discovery has been completed and filed with the court and the defendants have again renewed their motion to dismiss. Accordingly the court advised the attorneys for all parties that it would again consider the motion to dismiss and a hearing was held thereon in Lubbock, Texas on August 15, 1974. In addition to the above-mentioned motions to dismiss, the defendants have filed a motion for summary judgment on the grounds that the plaintiff's complaint is barred by the statute of limitations, but in view of the action by this court dismissing the complaint for lack of jurisdiction, no ruling will be entered or made on the motions for summary judgment.

"The affidavits which have been filed in this case, the answers to interrogatories and other discovery documents show without any contradiction the following:

"Syntex Laboratories, Inc., the Delaware corporation, did not commence

---

1. Also described as a Division of Syntex Corporation.

2. The original complaint prayed "that the Defendants, SYNTEX LABORATORIES, INC. and SYNTEX CORPORATION, be cited to appear" etc. (App. 3.)

business until August 1, 1972 and was incorporated on November 19, 1971. The oral contraceptives in question in this case, known as Norinyl 1 + 80, were prescribed to the plaintiff and she commenced taking them in September 1970 and ceased taking the pills in March of 1971, before Syntex Laboratories, Inc. was incorporated and before they commenced doing business. There is no showing in the record in this case that Syntex Laboratories, Inc. was a successor to any other legal entity that might have manufactured or distributed the pills in question.

"An interrogatory in the record does show that the pills in question are now a product of Syntex Laboratories, Inc. but nothing indicates that at the time the plaintiff took these pills that it was a product of Syntex Laboratories, Inc., or of its predecessor corporations, or any of its affiliates.

". . .

"The other defendant, Syntex Corporation, is a Panama corporation. Unlike its co-defendant, this defendant has been in business and a corporation since 1957 under a corporate charter from the Republic of Panama. The uncontradicted evidence with respect to the activities of Syntex Corporation show [sic] that the pills in question were not the principal product of nor manufactured by Syntex Corporation. In answer to another interrogatory, although it was admitted that it was currently a product of the co-defendant, Syntex Laboratories, Inc., the answer fails to show that it is even a sideline product of the defendant, Syntex Corporation. Again the plaintiff has failed to meet the burden to sustain jurisdiction in this court. Syntex Corporation, according to the record now before the court, had nothing to do with the manufacture or distribution of the pills in question and there is no way that service of citation could be perfected on this defendant under Art. 2031b, V.A.T.S., as this cause of action does not arise out of any busi-

ness transacted in this state or any tort committed in this state by Syntex Corporation. Further, the record does not reveal any contacts by Syntex Corporation in or with the State of Texas that would satisfy the due process clause of the Constitution of the United States and lack of such minimum contacts is a ground for motion of dismissal. Neither of the defendant corporations in this case are subject to the jurisdiction of this court under these facts and the applicable requirements of law. *O'Brien v. Lanpar Co., supra* [399 S.W.2d 340, Tex. 1966]." (App. 273–277.)

The district court's reconsideration of the defendants' motion to dismiss began at a hearing on August 15, 1974 of the defendants' motion for summary judgment and a like motion filed by the plaintiff. The answers of defendant "Syntex Laboratories, Inc., a Division of Syntex Corporation" to interrogatories filed by the plaintiff had been filed on March 14, 1974. We can well understand the claim of plaintiff's attorneys that they were actually though unintentionally misled by the answers to Interrogatories 22 and 33:

"*Interrogatory No. 22:* Is the product Norinyl 1 + 80 birth control pills a sideline product of either Syntex Laboratories, Inc. or Syntex Corporation?

"Answer: Norinyl 1 + 80 is a product of Syntex Laboratories, Inc." (Record on Appeal 93.)

"*Interrogatory No. 33:* When was the product Norinyl 1 + 80 birth control pills initially manufactured?

"Answer: 1968." (Record on Appeal 95.)

After answers of Syntex Laboratories, Inc. to 184 interrogatories, plaintiff remained without a clear understanding of the name of the Syntex Corporation to be sued for her injuries. In Interrogatory No. 35 the plaintiff had inquired, "Is the product Norinyl 1 + 80 patented?" and the defendant had answered "No." (R. 96.) The plaintiff's attorney did not know the question to elicit the informa-

tion ultimately disclosed in oral argument on appeal to the effect that either the Syntex Corporation chartered in Panama or else a different "Syntex Panamanian Corporation" does have a patent on the ingredients of the birth control pill and that from 1968 to 1972 the distributing corporation was called Syntex Laboratories, U.S.A., a name very similar to that of the Delaware corporation sued.

Mr. Sturdivant, attorney for the defendants, stated in the hearing of August 15, 1974, shortly before the entry of the judgment: "I mean, I probably represent the whole conglomerate of Syntexes, you understand, but who is going to pay this judgment, the stockholders of Syntex Corporation or the stockholders of Syntex—" (R. 320.) In oral argument on appeal, the plaintiff's counsel relied strongly on that admission of Mr. Sturdivant. Mr. Sturdivant did not deny such representation. Further in his oral argument on appeal, Mr. Sturdivant said:

"*MR. STURDIVANT:* It's real simple. We have a Syntex Panamanian Corporation that has the patent on the ingredients that goes [sic] into the birth control pill.

"*JUDGE BROWN:* That's what I thought.

"*MR. STURDIVANT:* In 1968 to 1972 we had a corporation called Syntex Laboratories, U.S.A. That was the marketing and producing corporation that should have been made the defendant. In 1972, on August 1, we created the Syntex Laboratories, Inc., with their offices in Palo Alto, California, and they took all of the rights to the product of manufacturing and distribution and, of course, there possibly could be some liability on an assumption of another corporation, but they could not have proved that if they had gone to trial. They would have had a directed verdict against them because they did not have sufficient evidence there to establish a chain between the two corporations.

"*JUDGE BROWN:* But they sued Syntex Corporation and Syntex Laboratories?

"*MR. STURDIVANT:* Well, sorta—

"*JUDGE BROWN:* No, not sorta, it's in the complaint, there is a prayer—

"*MR. STURDIVANT:* Right—

"*JUDGE BROWN:* All right—

"*MR. STURDIVANT:* Actually, they sued Syntex Laboratories, Inc., a division of—but I don't want—a division of Syntex, Inc., but I don't want to stand on any kind of a misnomer, because we told them time and time again about the misnomer and waived it—

"*JUDGE BROWN:* I don't think misnomer is the problem.

"*JUDGE GEE:* Did Syntex Corporation manufacture any of these pills during this period?

"*MR. STURDIVANT:* 1968 to '72 or '72 after that as the Panamanian Corporation?

"*JUDGE GEE:* No, Syntex Corporation, the other defendant.

"*MR. STURDIVANT:* No. Syntex Corporation Panamanian Corporation has a right to the ingredients, they get the ingredients from Panama and they have the sole right to them, they have other corporations that do, and there may be liability against Syntex as a parent corporation. That's a whole body of law in itself, whether a parent corporation is liable for the acts of the subsidiary." (Tape of Oral Argument on Appeal.)

It thus appears, though not too clearly, that "Syntex Panamanian Corporation" is a different corporation from the named defendant "Syntex Corporation" which was organized under the laws of Panama. As has been stated, Mr. Sturdivant had made clear that "[i]n 1968 to 1972 we had a corporation called Syntex Laboratories, U.S.A. That was the marketing and producing corporation that should have been made the defendant." It may or not now appear that liability can be proved against one or both of the

named defendants. In any event, if so requested, permission should be granted to add a new defendant or new defendants, such as, Syntex Panamanian Corporation, Syntex Laboratories, U.S.A., or some other precisely named corporation member of the conglomerate of Syntexes.

In entering its order of dismissal for lack of jurisdiction the district court implicitly denied the alternative prayer with which plaintiff's trial brief concluded:

> "WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendant's Motion for Summary Judgment be denied in all respects, and in the alternative, if Defendants are contending that the product Norinyl 1+80 was neither manufactured, marketed or distributed in any way by either Defendant in the State of Texas at the time alleged in Plaintiff's Petition, that Defendant so furnish this information to Plaintiff, or alternatively, if Defendants are relying upon a subterfuge by change in corporate structure or reorganization to escape jurisdiction, that this information be furnished to Plaintiff."

Also denied, either implicitly or expressly, were the earnest pleas of plaintiff's counsel on oral argument to the district court:

> "MR. RAMSEY [plaintiff's counsel]: It is quite possible that the liability is there just one hundred per cent and I am just asking the Court to give us permission to go into these matters so that this lady's cause of action, if she has a cause of action, can be presented.
>
> "THE COURT: Well, I am in sympathy with not just tossing a plaintiff out on some technicality although I am not saying this is a technicality here, we don't know.

> "MR. RAMSEY: No, sir, but I think the Court will find this too and I say this again and I say it apologetically because I am certainly not accusing Mr. Sturdivant of anything, but I think the Court will find that this is the law, that the statute of limitations does not run in the event a plaintiff—and not even purposely misled, but if a plaintiff is inadvertently misled and I think I can give the Court some law on that. In other words—
>
> "THE COURT: But they have got to be misled by the new defendant you are bringing in.
>
> "MR. RAMSEY: Well, I don't know, of course, what relation—
>
> "THE COURT: There is a reversion back provision in the limitations.
>
> "MR. RAMSEY: That's right. Of course, I am assuming now that in this conglomerate that he is talking about, that the conglomerate now is going to wind up and be a series of spin-offs and break-offs and these sort of things for tax purposes and that there will be some relationship where I think the responsibility of one is going to include the responsibility of another one, but I am sorry that—I just didn't understand his answers, but I certainly would like the Court to permit us to go into it." (App. 321–323.)

■ It does not appear to us that the plaintiff's attorney was at fault in having failed earlier to discover the facts now revealed. In any event, under all of the circumstances of this case the plaintiff should not be penalized for the error of her attorney. See *Wallin v. Fuller,* 5 Cir. 1973, 476 F.2d 1204, 1211; *Ferrell v. Trailmobile,* 5 Cir. 1955, 223 F.2d 697, 698.[3]

■ We hold that the district court acted too drastically in entering its order of dismissal without giving the plaintiff

---

**3.** Jurisdiction of the person should not be confused with subject matter jurisdiction. A defendant may voluntarily appear without service of process. Jurisdiction of the person may be waived but lack of subject matter jurisdiction may be asserted by the court sua sponte at any time or at the appellate level. 5 Wright & Miller, *Federal Practice and Procedure, Civil* § 1350.

a further opportunity for discovery and amendment of her complaint so as to have the proper defendants before the court. In a strikingly similar case the Supreme Court of Texas has held that the purpose of the Texas statute of limitations had been fulfilled when the proper defendant had full notice and an opportunity to defend the suit, if it so desired, and plaintiff's position as to the running of the statute of limitations was preserved as of the date of the filing of plaintiff's suit. *Continental Southern Lines, Inc. v. Hilland,* Tex.1975, 528 S.W.2d 828, 830, 831.

■ It makes no difference here that the amendment of plaintiff's complaint is a procedural matter to be governed by federal law. *Welch v. Louisiana Power and Light Co.,* 5 Cir. 1972, 466 F.2d 1344, 1345; 6 Wright & Miller, *Federal Practice and Procedure, Civil* § 1503. For Rule 15(c), F.R.Civ.P., like the Texas Supreme Court holding in *Continental, supra,* makes liberal provision for the relation back of amendments:

"(c) *Relation Back of Amendments.* Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back of the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2)

knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

"The delivery or mailing of process to the United States Attorney, or his designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of clauses (1) and (2) hereof with respect to the United States or any agency or officer thereof to be brought into the action as a defendant."

As noted in *Welch v. Louisiana Power and Light Co., supra,* at 466 F.2d 1345 n. 3:

" . . . this Court has found Rule 15(c) applicable to amendments which add parties and permitted such amendments if the rule's notice requirements are met. *Williams v. United States,* 5 Cir. 1968, 405 F.2d 234."

As has been stated, the district court dismissed for lack of in personam jurisdiction over the defendants, and did not rule on the defendants' motion for summary judgment which alleged that the plaintiff's complaint was already barred by the Texas statute of limitations. Likewise, we express no view on limitations except to observe the possible effect of the rule on relation back of an amendment to the complaint.[4] We leave also to the district court the initial determination of the applicability vel non of Rule 4, F.R.Civ.P. in connection with the Texas long arm statute, Vernon's Texas Civil Statutes, Tit. 42, Art. 2031b.[5] We simply reverse the order of dismissal and hold that the plaintiff should be given a reasonable opportunity for any needed discovery, and for the amendment of her

---

4. Instructive also may be a lengthy Annotation in 8 A.L.R.2d 6–188, and especially that part discussing the effect of "the fact that the original defendant and the substituted defendant had the same agents or employed the same attorneys and hence were in no way prejudiced by the substitution." 8 A.L.R.2d p. 163; see also, as to the Government, the concluding paragraph of Rule 15(c), F.R.Civ.P., quoted *supra.*

5. In that connection, it seems to us that the case of *Coulter y. Sears, Roebuck and Co.,* 5 Cir. 1970, 426 F.2d 1315, relied on by the district court in its order of December 5, 1973, is much more in point than *O'Brien v. Lanpar Co.,* Tex.1966, 399 S.W.2d 340, on which it relied in its order of dismissal.

complaint so as to name the proper defendants, and, if necessary and possible, for process to be served on any newly added defendant. ·

## REVERSED AND REMANDED.

GEE, Circuit Judge (dissenting):

I find myself unable to concur in the majority opinion, which reverses the decision of the district court for unassigned error and without seriously suggesting that it is incorrect. Plaintiff's complaint was filed in June 1973. In August 1974, after almost two hundred interrogatories, other discovery, and two hearings on the subject of *in personam* jurisdiction, the court dismissed the case for want of jurisdiction over the parties defendant. As I understand our ruling, we reverse in order to permit plaintiff to make further efforts to discover who the proper defendant is, not because the record affords any serious basis for belief that it is either of the present parties.

Before us, plaintiff-appellant Skidmore phrased the sole issue as:

> The trial court erred in dismissing appellant's cause of action on the grounds of lack of jurisdiction as to Syntex Laboratories, Inc., . . . in view of the fact that the record affirmatively reflects that there is a technical misnomer in the name of defendant, Syntex Laboratories, Inc. whereby appellant should have been allowed additional discovery and to amend the Complaint.

This, however, misstates it.

Ms. Skidmore attempted to cite "Syntex Laboratories, Inc., a Division of Syntex Corporation," by which she apparently intended to cite (1) Syntex Laboratories, Inc. (a Delaware corporation) and (2) Syntex Corporation (a Panamanian corporation). Her complaint alleges that the defendant(s) produced a birth control pill which injured her. For citation purposes (*in personam* jurisdiction purposes) she invoked the Texas longarm statute, claiming that the defendant(s) (1) committed a tort in Texas (2) out of which her cause of action arose and (3) neither maintained a regular place of business in the state nor appointed a resident agent. Service of citation was therefore had on the Texas Secretary of State. Defendant(s) repeatedly denied that the court had *in personam* jurisdiction. Specifically, each denied having engaged in business in Texas at the time the alleged tort occurred. The trial court at first denied defendant's motion to dismiss for lack of jurisdiction but was finally convinced at a subsequent hearing and granted the motion without prejudice.

It seems to me clear that the district court correctly determined that, at least as of the time he dismissed, jurisdiction was lacking. At the hearing on the motion to dismiss it developed that Syntex Corporation never produced, nor does it now produce, birth control pills and that Syntex Laboratories, Inc. does produce the pills now but was not incorporated or doing business anywhere at the time Ms. Skidmore took her pills. There is no proof that Syntex Laboratories, Inc. is the successor to the producer of the pill which allegedly injured · Ms. Skidmore. Thus, the problem is not that Skidmore misnamed the maker of the pills or the defendant in her complaint. Rather, it is that the maker is either unknown or no longer exists, and Ms. Skidmore failed to prove that either of the parties she cited via the longarm statute is legally substitutable or answerable for the maker's actions. Thus, she failed, as the Texas statute requires, to make even a prima facie showing of an essential jurisdictional fact: that either party cited committed a tort in Texas.

The law in this circuit on burdens and elements of proof for federal *in personam* jurisdiction based on the Texas Long Arm Statute is outlined in *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 489–91 (5th Cir. 1974) and *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1232–35 (5th Cir. 1973). In applying the law of those cases to the facts here, it appears that Ms. Skidmore failed to make a "prima facie showing of

the facts on which jurisdiction was predicated" under the Texas statute. *Cousteau* at 491. Ms. Skidmore had had over a year in which to get in a position to do so, with the full panoply of federal discovery procedures ready to her hand. I am not able to join in the conclusion that the district judge abused his discretion or acted precipitately in these circumstances. Nor can I join in the majority's observations regarding limitations, which seem to me in the nature of prejudgments of an issue which was neither passed on below nor presented to us. I therefore respectfully dissent.